## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| ERNEST EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   15-cv-1217 |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendant BNSF Railway Company's ("BNSF" or "Defendant") Renewed Motion to Dismiss Plaintiff's Complaint. (Doc. 10). Plaintiff Ernest Edwards has alleged that BNSF discriminated against him on the basis of disability by requiring that he lose weight and maintain that diminished body weight. In this motion, BNSF asserts that the First Amended Complaint (Doc. 9) must be dismissed because it is untimely. For the reasons that follow, Defendant's motion is granted.

### FACTUAL BACKGROUND

Plaintiff worked for BNSF from August 25, 1997 through January 21, 2013. He began work there as an engineer and conductor. On January 29, 2002, he suffered a torn meniscus while on the job. Orthopedic surgeon David Smith repaired the torn meniscus, and Plaintiff remained off work until November 2002. He returned to work as an engineer and conductor, but took leave again in February of 2003 due to a temporary medical restriction.

On March 1, 2004, BNSF assigned Plaintiff to be an Inspection Officer with its Resource Protection Department. As an inspection officer, Plaintiff patrolled BNSF yards in Cicero, Chicago, Aurora, Illinois, Ellwood, and Willow Springs, Illinois. Plaintiff, who was a member of the United Transportation Union, got this position as part of a pilot program initiated by BNSF to allow employees with certain duty restrictions to return to employment. Employees involved in the pilot program worked without union representation, an arrangement that the union did not challenge as contrary to its labor agreement with BNSF. Plaintiff held that position until January 21, 2013, when BNSF informed him that he could no longer work as an Inspection Officer without union representation.

Edwards, upon the recommendation of the chairman of the local chapter of his union, requested that BNSF permit him to return to work as an engineer and conductor. On February 25, 2013, BNSF's Regional Manager for Medical & Environmental Health Chris McGiniss sent Plaintiff a letter notifying him that he could only return to that position if he could meet two physical requirements: first, he needed to be able to walk 1 ¼ miles without excessive exertion; and second, he needed to maintain a body weight at or under around 292 pounds for six months. McGiniss based this requirements on an May 12, 2005 letter from Angela Baily, BNSF's Regional Manager for Medical & Environmental Health in Denver.

At some point after receiving McGiniss's letter, Plaintiff made a follow-up appointment with his orthopedic surgeon. Dr. Smith examined Plaintiff on May 31, 2013, and concluded in a report that Plaintiff could work as an engineer and conductor without medical restriction. Plaintiff presented this information to

2

McGiniss as evidence that the weight loss requirement that BNSF imposed upon him was medically invalid and not related to his ability to do the work. In spite of this, McGiniss refused to allow Plaintiff to return to work unless he could meet the standards. Plaintiff filed his initial complaint alleging that BNSF violated the Rehabilitation Act on May 28, 2015.

## LEGAL STANDARDS

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts "to present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555.

Ordinarily it is premature for courts to consider unpleaded affirmative defenses at the motion to dismiss stage, because "complaints do not have to

anticipate affirmative defenses to survive a motion to dismiss." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)(citation omitted). However, there is an exception when a complaint's allegations "set forth everything necessary to satisfy the affirmative defense." *Id.* In such circumstances, the Seventh Circuit characterizes these motions as Rule 12(c) motions for judgment on the pleadings, in spite of the fact that they are filed before the pleadings are closed. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991); *see also Brooks v. Ross*, 578 F.3d 574, 579 (2009) (noting that the practical effect of addressing a statute of limitations defense in a Rule 12(c) motion is the same as addressing it in a Rule 12(b)(6) motion). Thus, all well-pleaded facts in the operative complaint are taken as true and all reasonable inferences drawn in the plaintiff's favor. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004). When "a plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness," it is appropriate to dismiss it pursuant to Rule 12(c). *See Cancer Found., Inc. v. Cerberus Cap. Mgmt.*, 559 F.3d 671, 674-75 (7th Cir. 2009).

## DISCUSSION

Defendant has moved to dismiss the First Amended Complaint on the ground that it is untimely. Plaintiff's First Amended Complaint alleges that Defendant violated Section 504 of the Rehabilitation Act, which prohibits discrimination on the basis of disability by entities that receive federal funding. *See* 29 U.S.C. § 794(a).

The Rehabilitation Act's statute of limitations is determined by the limitations period for personal injury claims in the forum state, which means there is a two-year statute of limitations in Illinois. *Untermyer v. Coll. of Lake Cnty*, 284 F. App'x 328, 330 (7th Cir. 2008); *Cheeney v. Highland Cmty. Coll.*, 15 F.3d 79, 82 (7th Cir. 1994). As Plaintiff initiated the lawsuit on May 28, 2015, any Rehabilitation Act claim is untimely unless it accrued on or after May 28, 2013. *See id.* Plaintiff argues that his claim is timely because it did not accrue until he presented Defendant with Dr. Smith's report sometime after May 31, 2013. Defendant, however, argues that Plaintiff's claim accrued no later than February 25, 2013, when Plaintiff received McGiniss's letter informing him of the conditions he must meet to return to his previous position.[1] The Court concludes that the claim accrued when Plaintiff received McGiniss's letter, which makes it untimely.

## I. Employment Discrimination Under the Rehabilitation Act

In employment discrimination claims brought under the Rehabilitation Act, courts apply the standards established by the Americans with Disabilities Act. 29

---

[1] The First Amended Complaint does not expressly state that Plaintiff received McGiniss's letter on February 25, 2013. Rather, Plaintiff alleges that McGiniss responded to Plaintiff's request to return to work with a February 25, 2013 letter and that Plaintiff received the letter. (*See* Doc. 9 at ¶¶ 16, 18). However, Plaintiff has failed to challenge Defendant's reading of the First Amended Complaint that he received notice of the criteria on February 25, 2013, which constitutes waiver. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007); *see also Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001)(explaining that a failure to respond to an argument infers acquiescence, which "operates as a waiver."). In his response to Defendant's Motion to Dismiss, Plaintiff made no effort to argue that he was unaware of Defendant's restrictions until on or after May 28, 2013. (*See* Doc. 13). Instead, Plaintiff seems to concede that he received McGinnis's letter on February 25, 2013 or at least before May 28, 2013 by arguing that his claim accrued not upon receipt of the letter but instead when Defendant failed to reconsider its policies. (*See* Doc. 9 at ¶¶ 24-25; Doc. 13 at 3-5; 6-7).

U.S.C. § 794(d); *see also Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). Under the ADA, employers may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

There are a number of ways in which employers may discriminate against an individual on the basis of disability, s*ee* 42 U.S.C. § 12112(b), and two are relevant here. First, employers may discriminate by "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by [the employer] is shown to be job-related for the position in question and is consistent with business necessity." *Id*. at § 12112(b)(6). Second, employers may discriminate by "denying employment opportunities to a[n] . . . employee who is an otherwise qualified individual with a disability, if such denial is based on the need of [the employer] to make a reasonable accommodation to the physical or mental impairments of the employee . . . ." *Id*. at § 12112(b)(5)(B).

In the First Amended Complaint, Plaintiff alleges that BNSF discriminated against him on the basis of disability by utilizing improper criteria in denying him the engineer and conductor job. (*See* Doc. 9 at ¶ 23 (citing 42 U.S.C. § 12112(b)(6))). In his response to Defendant's Motion to Dismiss, Plaintiff attempts to develop a claim that Defendant failed to reasonably accommodate his disability in violation of

42 U.S.C. § 12112(b)(5). As discussed further below, any claim that Defendant discriminated against Plaintiff by imposing improper job criteria accrued when McGiniss informed Plaintiff of the criteria Defendant was imposing. Plaintiff's attempt to extend the statute of limitations by reframing his claim as one alleging that Defendant failed to reasonably accommodate him is unsuccessful.

**II. Accrual of a Claim of Discrimination under 42 U.S.C. § 12112(b)(6)**

In order to determine when the statute of limitations of Plaintiff's claim expired, the Court must determine when it accrued. *See Cordova v. Univ. of Notre Dame Du Lac*, 936 F. Supp. 2d 1003, 1010 (N.D. Ind. 2013). In discrimination claims, the statute of limitations begins to run on the date that a plaintiff receives notice of a discriminatory decision. *See Delaware State College v. Ricks*, 499 U.S. 250, 258 (1980). "The proper focus is the time of the discriminatory acts, not upon the time at which the consequences of the act become most painful." *Id.* (internal quotation marks omitted).

Although *Ricks* was a Title VII employment discrimination case, the Seventh Circuit applies its rule in disability discrimination cases brought pursuant to the ADA. *See Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 549-51 (7th Cir. 1996); *Cordova*, 936 F. Supp. 2d at 1010; *Geary v. Univ. of Wisconsin-Milwaukee Dep't of Philosophy*, No. 12-CV-518-JPS, 2012 WL 6026336, at *1-2 (E.D. Wis. Dec. 4, 2012). In *Soignier*, a plastic surgeon sued the American Board of Plastic Surgery under the ADA after he failed his licensing examination for the fifth time in November of 1992. 92 F.3d at 549-50. He alleged that the Board discriminated against him by not fully accommodating his disability during the administration of

the test. *See id.* Following his failure, he pursued a voluntary internal appeal, and requested another opportunity to take the exam with accommodations. *Id.* at 550. The Board rejected his request for a sixth opportunity to take the test in May of 1993, and it denied his appeal of the results in November of 1994. *Id.* at 552. Plaintiff filed his ADA complaint in May of 1995. *Id.* at 550.

The *Soignier* court held that his complaint was not filed within the ADA's two-year statute of limitations because "discovery of the original act of discrimination, *not* future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run." *Id.* at 551. Moreover, it held in the context of the ADA that the surgeon's appeals and requests for reconsideration were not fresh acts of discrimination that could restart the statute of limitations. *Id.* at 552 (quoting *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992)); *see also Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001)(internal citations omitted) (internal quotation marks omitted) (explaining, in the Title VII context, that a statute of limitations "begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows she has been injured, not when she determines that the injury was unlawful.").

To state a claim under the ADA, a plaintiff must allege facts showing that he is disabled, qualified to perform the essential function of the job either with or without reasonable accommodation, and that he suffered an adverse employment action because of his disability. *Gogos v. AMS Mechanical Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013). Plaintiff argues that Defendant discriminated against him in

8

violation of 42 U.S.C. § 12112(b)(6) because its qualification standards or selection criteria screened him out from the job. In a discrimination claim brought pursuant to § 12112(b)(6), a plaintiff must establish that there is a policy that either screens out or tends to screen out individuals with disabilities. *EEOC v. Aurora Health Care, Inc.*, NO. 12-CV-984-JPS, 2015 WL 2344727, at *18 (E.D. Wis. May 14, 2015). It is the defendant's burden to show that such a policy is job-related or consistent with business necessity. *See id.*; *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 994-95 (9th Cir. 2007) (identifying business necessity and job-relatedness as affirmative defenses available to employers in the § 12112(b)(6) context).

Plaintiff's § 12112(b)(6) claim accrued on February 25, 2013. It was at that time that McGiniss informed Plaintiff that BNSF was requiring him to demonstrate his ability to walk for 1 ¼ miles and maintain a reduced weight. (Doc. 9 at ¶ 17). Plaintiff could have brought a § 12112(b)(6) claim at that time because the policy screened him from employment as an engineer and conductor, which constitutes discrimination because of disability. *See Aurora Health Care Inc.*, 2015 WL 2344727, at *18; *Bates*, 511 F.3d at 994. Because Plaintiff received notice of the discriminatory decision that gave rise to his discrimination claim on February 25, 2013, and he was injured by the decision as he could not return to the position at that time, the statute of limitations began to run at that point. *See Ricks*, 499 U.S. at 258; *Soignier*, 92 F.3d at 551; *Sharp*, 236 F.3d at 372 (explaining that the statute of limitations begins "when the defendant has taken the action that injures the plaintiff and when the plaintiff knows []he has been injured . . . .").

9

Plaintiff argues that his claim did not accrue until after May 31, 2013 because "BNSF was entitled to rely upon the weight restriction until [Plaintiff] submitted [Dr. Smith's report] finding there was no medical reason preventing Edwards from working as an engineer or conductor." (Doc. 13 at 6). He suggests that BNSF did not discriminate until it ignored this report and chose to continue with the policy that it announced on February 25, 2013.

Such an argument misunderstands the law. It is BNSF and not Plaintiff who has the burden of demonstrating that a policy that screens out or tends to screen out people with disabilities is rooted in business necessity and job-relatedness, as those are affirmative defenses. *See Bates*, 511 F.3d at 994; *Aurora Health Care Inc.*, 2015 WL 2344727, at *18. To state a claim, Plaintiff was not required to plead facts sufficient to overcome any affirmative defenses that BNSF might have offered. *See Lewis*, 411 F.3d at 842 (explaining that "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss."). Plaintiff did not need this report in order to bring his claim.

There are not any additional grounds for extending the statute of limitations beyond February 25, 2013. Plaintiff may not have been aware that BNSF's criteria were illegal until he obtained an opinion from his doctor, but that does not matter as Plaintiff's subjective understanding that Defendant's behavior was illegal is not what begins the statute of limitations. *See Soignier*, 92 F.3d at 551 (explaining that statute of limitations begins upon discovery of the original act of discrimination, and not upon discovery that the injury is unlawful); *Sharp*, 236 F.3d at 372; *Combs v. E. Peoria Cmty. High School Dist. 309*, 2011 WL 2790158, at *3 (C.D. Ill. July 14,

2011). Plaintiff also urged Defendant to reconsider its decision when he provided Dr. Smith's letter to McGiniss. This too, cannot reset the statute of limitations. *See, e.g., Soignier*, 92 F.3d at 552 (explaining that requests for reconsideration of an earlier discriminatory decision cannot restart the statute of limitations); *Lever*, 979 F.2d at 556 (same).

For all of these reasons, the Court concludes that Plaintiff's discrimination claim brought pursuant to 42 U.S.C. § 12112(b)(6) accrued on February 25, 2013 when Plaintiff received notice of Defendant's policy. Plaintiff's subsequent steps to convince Defendant that its policy was unreasonable did not restart the statute of limitations. Plaintiff did not file his original complaint until May 28, 2015, which is more than two years after the action accrued. Therefore, it is untimely.

### III.     Discrimination under 42 U.S.C. § 12112(b)(5)

Plaintiff also attempts to argue that he timely filed his complaint by reframing his claim as one for a reasonable accommodation. In essence, Plaintiff argues that Defendant could have reasonably accommodated his disability by removing the weight condition, which he asserts is illegitimate. He argues that he did not request such an accommodation until late May of 2013, when he provided Defendant with a copy of Dr. Smith's most recent medical opinion. This effort to extend his time for filing runs into insurmountable legal hurdles. Plaintiff's First Amended Complaint cannot state a reasonable accommodation claim in this circumstance. Therefore, this argument that his action is timely must fail.

The elements of a reasonable accommodation claim pursuant to the Rehabilitation Act are familiar: (1) the plaintiff must be a qualified individual with

a disability; (2) the employer must be aware of the plaintiff's disability; and (3) the defendant must have failed to reasonably accommodate the disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013) (citing *EEOC v. Sears Roebuck & Co.*, 417 F.3d 789 (7th Cir. 2005)). In *Brumfield*, the Seventh Circuit clarified that "[t]he *Sears* formulation should not be understood to enable a plaintiff to state a failure-to-accommodate claim against [his] employer even though [he] was able to perform all essential functions of her job without regard to [his] physical or mental limitations." *Id.* at 631-32. The court explained:

> A disabled employee who is capable of performing the essential functions of a job in spite of [his] physical or mental limitations is qualified for the job, and the ADA prevents the employer from discriminating against [him] on the basis of her irrelevant disability. But since the employee's limitations do not affect [his] ability to perform those essential functions, the employer's duty to accommodate is not implicated.

*Id.* at 633. It summarized its rule, writing, "to satisfy the first element of a failure-to-accommodate claim, the plaintiff must show that [he] met the employer's legitimate selection criteria and needed an accommodation to perform the essential functions of the job at issue . . . ." *Id.*

In the First Amended Complaint, Plaintiff includes a number of allegations to establish that he is a qualified individual with a disability. First, he pleads facts to establish that he is disabled because Defendant regards him as having an impairment. *See* 42 U.S.C. § 12102(1)(C). He pleads that he "the BNSF regarded his surgically repaired torn meniscus of the knee as affecting his ability to walk or lift or having a record of disability." (Doc. 9 at ¶ 22). He also pleaded that "[t]he BNSF regards his weight as a disability preventing him from performing those jobs . . . ."

12

(*Id.* at ¶ 27). Plaintiff also attempts to show that he is disabled because he has a record of disability. *See* 42 U.S.C. § 12101(1)(B). For example, he pleads that he tore his meniscus on January 29, 2002, (Doc. 9 at ¶ 18), and subsequently had to "remain off work." (*Id.* at ¶ 8). One thing is clear from the First Amended Complaint, however: Plaintiff has not pleaded any facts that suggest that he currently has a physical or mental impairment that substantially limits him in any major life activity. *See* 42 U.S.C. § 12102(1)(A). Instead, he alleges that he has no limitations that would interfere with his work. (*See, e.g.,* Doc. 9 at ¶¶ 19-20 (discussing Dr. Smith's opinion that Plaintiff has "no current issues that would interfere with his work.")).

The factual bases upon which Plaintiff alleges that he is disabled cannot support a reasonable accommodation claim. First, the ADA expressly forecloses reasonable accommodations claims for individuals who solely allege disability on the ground that they are regarded as disabled, so Plaintiff's allegations that BNSF regarded him as disabled are irrelevant in the reasonable accommodation context. *See* 42 U.S.C. § 12201(h). Second, any argument that Plaintiff is entitled to a reasonable accommodation because he has a record of disability runs into *Brumfield*.

Individuals who allege that they have a record of disability may be entitled to a reasonable accommodation in some instances. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 535 (7th Cir. 2013)(explaining that it is unclear whether employers have a duty to accommodate individuals with a record of disability); *but see* 29 C.F.R. § 1630.2(k)(3) (entitling individuals "with a record of a substantially limiting

13

impairment . . . to a reasonable accommodation if needed and related to the past disability."). Plaintiff has not alleged that his record of disability would interfere with his ability to meet BNSF's requirements without reasonable accommodation. Such an accommodation would not be barred by *Brumfield*, *see* 735 F.3d at 633, and is precisely the type of accommodation envisioned by the ADA's regulations. *See* 29 C.F.R. § 1630.2(k)(3) (suggesting that an employee with a record of disability who is no longer substantially limited in a major life activity may need a reasonable accommodation so he can take leave or change his schedule in order to attend follow-up appointments with a health care provider).

Plaintiff is not entitled to a reasonable accommodation on behalf of his record of disability because has alleged that he is fully able to do the work of an engineer or conductor with BNSF and now argues that that BNSF should accommodate him by removing an unnecessary job restriction. These facts cannot satisfy the first element of a reasonable accommodation claim. *See Brumfield*, 735 F.3d at 633 (requiring a plaintiff to establish that he is a qualified individual with a disability by pleading facts that show that he meets an employer's "legitimate selection criteria," but cannot perform essential functions of the job without an accommodation); *see also* 29 C.F.R. § Pt. 1630, App. (interpretive guidance explaining that "selection criteria that are related to an essential function of the job may not be used to exclude an individual with a disability if that individual could satisfy the criteria with the provision of a reasonable accommodation," but not requiring accommodations from illegitimate criteria).

As Plaintiff has not pleaded a cognizable reasonable accommodations claim, his argument that the statute of limitations did not begin to run until he requested such an accommodation cannot save his untimely claim.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's initial complaint was filed outside of the Rehabilitation Act's two-year statute of limitations. Therefore, the Court grants Defendant's Renewed Motion to Dismiss (Doc. 10), which it construes as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Plaintiff's Complaint is dismissed. IT IS SO ORDERED. CASE TERMINATED.


Entered this 2nd day of November, 2015.


                                    s/Joe B. McDade
                                    JOE BILLY McDADE
                                  United States Senior District Judge